**Linda Shelia CANNON, Plaintiff,**

v.

**STATE OF DELAWARE, Delaware State Personnel Commission, Defendant.**

Civ. A. No. 80–520.

United States District Court,
D. Delaware.

Sept. 28, 1981.

---

Linda Shelia Cannon, pro se.

Charles J. Durante, Deputy Atty. Gen., State Personnel Commission, Dover, Del., for defendant.

## OPINION

STAPLETON, District Judge:

This is the third of three lawsuits arising from the termination of Linda Shelia Cannon's employment as a recreation activity aide at the Delaware State Hospital on January 4, 1979.[1] The complaint alleges two purported acts of racial discrimination: the denial of a hearing before the State Personnel Commission, and the reliance by the Commission on irrelevant evidence submitted at a hearing that was held on September 19, 1979. The State has moved to dismiss, pursuant to Rule 12(b)(1) and 12(b)(6), Federal Rules of Civil Procedure, contending that the Court lacks jurisdiction over this action. In support of that motion, defendant presents two arguments which require interpretation of Title VII. First, the State maintains, the Personnel Commission is not an "employer" within the meaning of 42 U.S.C. § 2000e(b). Second, defendant argues, plaintiff did not present her claim to the Delaware State Department of Labor and has, therefore, failed to exhaust the administrative review process provided in Title VII.[2]

---

1. C.A. 80–408, *Cannon v. AFSCME Local 640*, was dismissed on August 10, 1981 because plaintiff failed to respond by affidavit to defendant's motion for summary judgment, as required by Rule 56(e). In *Cannon v. Delaware State Hospital*, C.A. 80–519, plaintiff seeks relief against the hospital under Title VII.

2. In support of the latter argument the State submits the affidavit of Allen Washington. Because to consider this affidavit I must go beyond the pleadings, I will treat this motion as one for summary judgment. Rule 12(b), F.R. C.P.

## I. THE FACTS

Until January 4, 1979, the Delaware State Hospital employed Linda Shelia Cannon as an activity aide. As a non-probationary employee, Ms. Cannon could be terminated only for good cause. After plaintiff's alleged failure to report to work for a period of nine days without an acceptable medical excuse, S.J. Shiner, her supervisor, informed her by letter that he deemed her position "abandoned" under Merit Rule 6.0600, and terminated her employment. Plaintiff filed a grievance with the State Personnel Commission the following day. Although the Commission has statutory authority to hear appeals from the dismissal of State employees, 29 Del.C. § 5907, Section 5949(c) of that Title permits the substitution of a different appeal procedure through collective bargaining. In this case, the American Federation of State, County and Municipal Employees apparently had agreed upon a different appeal process.[3]

Robert C. Feeney, the Hospital Director, scheduled a Step Three Grievance Hearing under the collective bargaining agreement on February 22, 1979. He upheld Ms. Cannon's termination. Although the Personnel Commission may have lacked jurisdiction to consider her grievance, it decided to provide a hearing because it had previously informed Ms. Cannon that she would receive a hearing. The Commission heard plaintiff's appeal on September 19, 1979 and upheld her discharge by a unanimous vote.

On June 7, 1979 plaintiff filed a charge accusing the State Personnel Commission of unlawful discrimination with the Equal Employment Opportunity Commission ("EEOC"). She alleged that the Commission had denied her a grievance hearing because of her race. As noted above, the Commission subsequently provided a hearing. On April 21, 1980, finding no reasonable cause to believe the allegations in her complaint were true, the District Director of the EEOC informed plaintiff of her right to sue under the Civil Rights Act. The Department of Justice issued a formal right to sue letter on July 30, 1980. Plaintiff commenced this action on October 24, 1980.

## II. THE DEFINITION OF "EMPLOYER"

Title VII of the 1964 Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.*, provides in part:

(a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race....

42 U.S.C. § 2000e–2(a)(1). The Act defines "employer" to mean "a person engaged in an industry affecting commerce who has fifteen or more employees ... and *any agent of such a person....*" (emphasis added). 42 U.S.C. § 2000e(b). Person, in turn, is defined to include "governments, governmental agencies, [and] political subdivisions." 42 U.S.C. § 2000e(a).

Plaintiff does not assert a claim against the Personnel Commission as her employer in the customary sense of the word. The Commission does not pay her salary, hire or fire her, or prescribe the conditions under which she worked. Her claim is limited to the Commission's alleged refusal to give her a hearing after her dismissal, its failure to explain why she was not offered a hearing, and the subsequent use of allegedly improper evidence at the hearing the Commission did provide. But I need not conclude that the Personnel Commission is an employer in the usual sense, because the Act expressly reaches the conduct of "any agent" whose conduct may violate the terms of 42 U.S.C. § 2000e–2(a). This explicit language impels me to the conclusion that the Personnel Commission may be liable under Title VII, because it is an agent of the State of Delaware, responsible for supervising the operation of the merit system under a legislative mandate.

**3.** I say "apparently" because defendant has submitted only a portion of the AFSCME grievance procedure as an exhibit to its brief. I am unable to determine whether the agreement preserves a right of appeal to the Personnel Commission.

Neither *NOW v. Waterfront Commission*, 468 F.Supp. 317 (S.D.N.Y.1979), nor *Lavender-Cabellero v. Dept. of Consumer Affairs*, 458 F.Supp. 213 (S.D.N.Y.1978), the two cases on which defendant relies, persuades me that the Commission is not potentially liable under Title VII. In *NOW*, the National Organization of Women sued the New York City Waterfront Commission because its policy of limiting applicants for licenses as cargo checkers to registered longshoremen effectively excluded women from such jobs. *Lavender-Cabellero* also involved a city agency in the role of licensing authority, rather than as an agent of a governmental body in its proprietary capacity as an employer. Both courts emphasized the interference with State police powers which might result from subjecting their exercise to Title VII scrutiny. Distinguishing a case involving the New Hampshire Racing Commission, Judge Sweet wrote:

> Here the licensing agency has absolutely no relationship to the plaintiff or his employment other than as a consequence of performance of its duties pursuant to its police powers, rather than as a result of proprietary powers. . . .

*Lavender-Cabellero, supra*, 458 F.Supp. at 215; *see* also *NOW v. Waterfront Commission, supra*, 468 F.Supp. at 320. No danger of interference with a State licensing agency is present here.[4]

## III. EXHAUSTION OF STATE ADMINISTRATIVE REMEDIES

■ Section 2000e–5(c) of Title 42 provides:

> (c) In the case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, which has a state or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice, or to institute proceedings with respect thereto upon receiving notice thereof, no charge may be filed under subsection (b) of this section by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated. . . .

Delaware State law prohibits employment discrimination in terms almost identical to Title VII itself.[5] It empowers the Department of Labor to investigate allegations of discrimination, to conciliate disputes between employers and employees, and to issue remedial orders upon a finding of discrimination. 19 Del.C. § 712. The statute further provides for judicial review in the Court of Chancery 19 Del.C. § 712(h), and for the initiation of civil actions by the State Attorney General, 19 Del.C. 713.

The State Department of Labor is an agency with the authority to investigate and remedy plaintiff's complaint against the Personnel Commission, and is therefore one to which her Title VII claim must be presented under Section 2000e–5(c).[6] In support of its motion to dismiss, defendant submits an affidavit by Allen Washington, Director of the Anti-Discrimination Unit of the Department of Labor, in which he asserts, "my inspection of the Department's files indicates that no claim has ever been filed with this Department by a Linda Cannon against the State Personnel Commission." (Aff. ¶ 3). Plaintiff has not disputed this affidavit.

---

**4.** *NOW* and *Lavender-Cabellero* depart from a line of authority which defines "employer" very broadly for purposes of Title VII. *See*, e. g., *Sibley Memorial Hospital v. Wilson*, 488 F.2d 1338 (D.C.Cir.1973) (hospital which controlled access to patients but did not itself compensate private duty nurse was an employer); *Vanguard Justice Society v. Hughes*, 471 F.Supp. 670 (D.Md.1979) (Baltimore Civil Service Commission held an employer); *Puntolillo v. New Hampshire Racing Commission*, 375 F.Supp. 1089 (D.N.H.1974) (Commission controlled access to job market). This construction is consistent with the breadth usually afforded statutes such as Title VII. *Hart v. J. T. Baker Chemical Co.*, 598 F.2d 829, 831 (3d Cir. 1979).

**5.** *Compare* 19 Del.C. § 711 *with* 42 U.S.C. § 2000e–2.

**6.** The Delaware Department of Labor is recognized as such an agency by the EEOC. 29 C.F.R. §§ 1601.70, 1601.74(a).

There is also no dispute that plaintiff filed a timely complaint with the EEOC. Title VII required the EEOC to defer to the primary jurisdiction of the Department of Labor before processing Ms. Cannon's complaint. *Love v. Pullman Co.*, 404 U.S. 522, 525, 92 S.Ct. 616, 618, 30 L.Ed.2d 679 (1972). In *Love* the Court upheld the procedure whereby the EEOC notified a State agency of a charge filed with the EEOC, deferring to the State's jurisdiction until the State agency either completed its review or "waived" jurisdiction. EEOC regulations describe the deferral procedure in effect in May of 1979 when Ms. Cannon presented her complaint to the Philadelphia Office of the EEOC.

(d) . . .

(1) Where any document, whether or not verified, is received by the Commission as provided in § 1601.8 which may constitute a charge cognizable under Title VII, and where the [State] agency has not waived its right to the period of exclusive processing with respect to that document, that document shall be referred to the appropriate [state] agency as provided in the procedures set forth below:

(i) . . .

(ii) A copy of the original document shall be transmitted by registered mail, return receipt requested, to the appropriate State or local agency, or, where the State or local agency has consented thereto, by certified mail, by regular mail or by hand delivery. State or local proceedings are deemed to have commenced on the date such document is mailed or hand delivered.

(iii) The person claiming to be aggrieved and any person filing a charge on behalf of such person shall be notified, in writing, that the document which he or she sent to the Commission has been forwarded to the State or local agency pursuant to the provisions of Section [2000e–5(c)].

29 C.F.R. § 1601.13(d)(1). Assuming that Mr. Washington's uncontroverted affidavit is correct, I must also conclude that the EEOC did not follow its own regulations when it failed to notify the Department of Labor of Ms. Cannon's discrimination charge. If this is the case, I next consider whether plaintiff was entitled to rely upon the EEOC's deferral procedure, or whether I must now dismiss this suit.

The purpose of deferral to state authorities is to permit as a matter of comity local authorities to work out their own problems. See 110 Cong.Rec. 13087 (1964). By creating this state exhaustion requirement, Congress did not intend to saddle individuals with burdensome legal technicalities or jurisdictional pitfalls. In a scheme in which aggrieved persons untrained in the law very often initiate the administrative process *pro se*, and in which the only enforcement power is vested in the federal courts, the individual's access to the courts must be vigorously protected. Thus, when an individual makes a good faith effort to comply with the administrative process by filing charges with the EEOC and relies on the special expertise of the EEOC to implement proper procedures, including deferral to the proper state agency, he should not be barred from suit. (citations omitted)

*McAdams v. Thermal Industries, Inc.*, 428 F.Supp. 156, 161 (W.D.Pa.1977). It would work an injustice inconsistent with the objectives of Title VII if the negligent omission of the EEOC were permitted to bar an employee's right to sue under Title VII. Nor can I find any reason to believe that the defendant could have suffered any prejudice from the EEOC's apparent mistake. The Commission had notice of Ms. Cannon's charge and appeared for a fact finding and conciliation proceeding on August 7, 1979. Subsequently it provided a hearing, and upheld plaintiff's termination by a unanimous vote.

Although it would be appropriate, for the reasons stated above, for this Court to retain jurisdiction pending a belated deferral to the State Department of Labor, there is an additional hurdle which must be surmounted in this case. In *Love*, the Supreme Court endorsed the EEOC's decision

to deem cases referred to State agencies as filed with the EEOC after the State agency waived jurisdiction, completed its review, or after sixty days from the date of referral. This procedure, however, remains subject to the overall time limits applicable to Title VII cases generally. Plaintiff's charge has not yet properly been filed. Section 2000e–5(e) requires that a charge must be filed within 180 days after the "alleged unlawful employment practice." The date of the last act of discrimination placed before the EEOC was May 23, 1979. Even if the Court assumes jurisdiction over matters not presented to the EEOC, the last act of discrimination alleged in the Complaint took place at the Personnel Commission hearing on September 19, 1979. Both dates are more than 180 days in the past. Consequently, even if the Court were to retain jurisdiction over this action to permit a remand to the State agency, plaintiff would still be unable to comply with the timeliness requirement of 2000e–5(e).

In *Hart v. J. T. Baker Chemical Co.*, 598 F.2d 829 (3d Cir. 1979), the Third Circuit held that the 180 day filing requirement is not jurisdictional, and is "therefore subject to equitable modifications such as tolling." *Id.* at 831. *Accord, Chappell v. Emco Machine Works*, 601 F.2d 1295 (5th Cir. 1979). *International Union of Electrical, Radio & Machine Workers v. Robbins & Myers*, 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976), however, teaches that the courts should be sparing in their application of equitable principle to Title VII time limits. Although the Court did not construe the time limit as jurisdictional, it rejected a claim that resort to arbitration procedures should toll the then 90-day time limit for filing an EEOC complaint.

Justice Rehnquist distinguished *IUERMW* from *Burnett v. New York Central R. Co.*, 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965), in which the Court allowed the tolling of limitations period for a federal FELA claim after the plaintiff had "the misfortune of filing his complaint in an Ohio State court where venue did not lie under Ohio law." *IUERMW v. Robbins & Myers, supra*, 429 U.S. at 238, 97 S.Ct. at 448. In *Burnett*,

> Petitioner . . . did not sleep on his rights but brought an action within the statutory period in a state court of competent jurisdiction. Service of process was made upon the respondent notifying him that petitioner was asserting his cause of action.

*Id., quoting Burnett v. New York Central R. Co., supra*, 380 U.S. at 429, 85 S.Ct. at 1055. In *IUERMW*, by contrast, the plaintiff did not file a charge with the EEOC until sixty-six days after the arbitration proceedings concluded. *Id.* 429 U.S. note 13 at 240, 97 S.Ct. note 13 at 449. In my view this case resembles *Burnett* far more closely than it does *IUERMW*, and, as in that case, the "policy of repose, designed to protect defendants is outweighed [by] the interests of justice." *Burnett v. New York Central R. Co., supra*, 380 U.S. at 428, 85 S.Ct. at 1055. As in *Burnett*, plaintiff made a good faith effort to comply with the applicable limitation period, and, if she failed, did so only because of the omission of the EEOC.[7] *See School District of City of Allentown v. Marshall*, 657 F.2d 16 (3d Cir. 1981) (equitable tolling appropriate "when the plaintiff has raised the precise statutory claim in issue but had mistakenly done so in the

---

7. In *Mohasco Corp. v. Silver*, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980), the Supreme Court construed the 300 day limitation for filing discrimination complaints in "deferral" states, those with state antidiscrimination agencies, 42 U.S.C. § 2000e–5(e). In *Mohasco* the plaintiff did not file a charge with the EEOC, which then submitted it to the New York Human Rights Commission, until 291 days after the alleged act of discrimination. The Court concluded that the 120 day period added to the statutory limitation period for

administrative review to permit consideration by a state agency did not extend the 180 period for initial filing.

Here, there was no failure of diligence on plaintiff's part. She filed with the EEOC long before either the 180 day or 300 day limits had expired. Accordingly, the policy of "strict adherence to the procedural requirements specified by the legislature," *Id.*, at 826, 100 S.Ct. at 2497, does not preclude tolling of the 300 day limitation as well.

wrong forum"); *Smith v. American President Lines, Ltd.*, 571 F.2d 102, 109 (2d Cir. 1978).[8]

I will therefore retain jurisdiction of this matter to permit plaintiff to file an employment discrimination charge with the Delaware State Department of Labor. In the interests of equity, however, plaintiff should not be entitled to an additional 180 days in which to file her complaint. Accordingly, I direct that Ms. Cannon file a complaint with the Department of Labor within thirty days from the date of this Opinion. Otherwise, the complaint will be dismissed.

### IV. MOOTNESS

Although the parties have not addressed this issue, and for that reason I will not now decide it, there appears to be an additional defect in the Court's jurisdiction over this case. Ms. Cannon's original grievance, filed with the EEOC, alleged only that the Personnel Commission had denied her a grievance hearing. The Commission subsequently provided such a hearing, and that complaint would now appear to be moot.

It does not appear from the present record whether Ms. Cannon ever amended her EEOC complaint to include the alleged use of improper evidence at the hearing, assuming for the moment that this could state a violation of Title VII. Although I hold above that Ms. Cannon was entitled to rely on EEOC procedures for referral of her

case to the appropriate State agency, she is not necessarily entitled to tolling of the limitations period on a claim which she never presented to the EEOC.

### V. CONCLUSION

Defendant's motion is denied. If Ms. Cannon fails to file a complaint with the Delaware Department of Labor within thirty days of the date of this Opinion, and to amend her complaint in this action accordingly, within sixty-five days thereafter,[9] defendant's motion to dismiss for failure to exhaust administrative remedies will be granted.

---

8. In *School District of Allentown v. Marshall, supra,* the Court held that a plaintiff who had mistakenly filed a claim of retaliation for the exercise of rights under the Toxic Substances Control Act with the EPA instead of the OSHA was not entitled to equitable tolling. The Third Circuit rejected the contention that the EPA's confusion in responding to the complaint was responsible for the delay beyond the limitations period. "When all the chaff is stripped away, the naked reason for the delay was Hanna's lack of knowledge about the remedy. The statutory language is plain and leaves no basis for reliance upon the EPA in any respect. Hanna's ignorance of the law is not enough to invoke equitable tolling." (citations omitted) At 21.

Here, it was the apparent failure of the EEOC to comply with its own regulations, on which plaintiff was entitled to rely, which caused the untimely filing. *See White v. Dallas Independent School District,* 581 F.2d 556 (5th Cir. 1978) (EEOC misled plaintiff into believing she had made a timely filing); *Cf. Chappell v. Emco Machine Works,* 601 F.2d 1295, 1304–06 (5th Cir. 1979) (Wisdom, J., dissenting) (reliance on state agency justified as is reliance on EEOC).

9. The sixty day period is the length of time the EEOC is required to defer to a State agency before undertaking consideration of a complaint itself. It is not necessary for the EEOC to repeat its consideration of this case. Plaintiff will be permitted an additional five days in which to prepare an amended complaint after the conclusion of the deferral period. This action remains subject to challenge on the ground of mootness and failure to exhaust discussed in Section IV above during the time allotted for the amendment of the complaint.