Audrey J. **JETER**, Plaintiff,

v.

Floyd H. **BOSWELL**, et al., **Defendants.**

**Civ. A. No. 82–0080–W(H).**

United States District Court,
N.D. West Virginia,
Wheeling Division.

Jan. 7, 1983.

---

Franklin D. Cleckley, Morgantown, W.Va., Helen Jackson-Gillison, Weirton, W.Va., for plaintiff.

W. Dean DeLaMater, DeLaMater, Hagg & Bohach, Weirton, W.Va., Arthur B. Muchin, Dorfman, Cohen, Laner & Muchin, Ltd., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

HADEN, District Judge.

Plaintiff, a black woman, brings this action pursuant to 42 U.S.C. §§ 1981 and 2000e–5(f), against her former employer, Levolor Lorentzen, Inc., and a supervisory employee of her former employer seeking to recover monetary, declaratory and injunctive relief. Currently pending before the Court is the Defendants' motion to dismiss, pursuant to *Rule* 12(b), Federal Rules of Civil Procedure, filed October 13, 1982. Inasmuch as the Court has referred to matters outside of the pleadings in deciding the Defendants' motion to dismiss, the Court has deemed it appropriate to treat the Defendants' motion as one for partial summary judgment, pursuant to *Rule* 56(b), Federal Rules of Civil Procedure. For the reasons set out below, this Court hereby denies the Defendants' motion.

### I. *Title VII's Administrative Remedy Exhaustion Requirement*

On October 19, 1981, the Plaintiff filed a complaint against her employer, Levolor Lorentzen, Inc., with the EEOC wherein she charged it with having demoted her discriminatorily on the basis of her sex and race.[1] The Plaintiff subsequently filed a second EEOC complaint against her employer on May 25, 1982, wherein she alleged that her employer had given her a five-day suspension from her employment and was otherwise retaliating against her for having filed her initial EEOC complaint.[2] As a result of the allegedly intolerable, discriminatory working conditions which she was continually subjected to, the Plaintiff terminated her employment with Levolor Lorentzen, Inc., on June 25, 1982.[2a] After the EEOC issued the Plaintiff a right to sue

---

1. *See* Exhibit A, attached to the Defendants' motion to dismiss, filed October 13, 1982.

2. *See* Exhibit B, attached to the Defendants' motion to dismiss, filed October 13, 1982.

2a. *See* Plaintiff's Answer to Defendants' Interrogatory No. 12, filed December 12, 1982.

letter on June 1, 1982, she subsequently commenced this Section 1981 and Title VII action on August 26, 1982, complaining of (1) her demotion from office manager to a lesser position, (2) her several suspensions from her employment, and (3) her constructive discharge.

■ Inasmuch as the Plaintiff commenced this civil action within less than 180 days from the filing of her May 25, 1982, administrative complaint [second charge][3] which was still pending before the EEOC, the Defendants argue that the Court does not have subject matter jurisdiction under Title VII over those allegations pertaining to the Plaintiff's suspension from her employment and the other allegations of retaliation by her employer which are raised in the second charge.[4] The Defendants further argue that the Court does not have subject matter jurisdiction under Title VII over the Plaintiff's alleged constructive discharge claim which the Defendants maintain was not raised before the EEOC. Defendants conclude, therefore, that the Court only has subject matter jurisdiction under Title VII over the Plaintiff's allegation that she was discriminatorily demoted.[5] Since the Plaintiff never filed a third charge with the EEOC pertaining to her alleged constructive discharge and, furthermore, inasmuch as she commenced this civil action before the EEOC had completed processing her second charge and within less than 180 days of her filing of the second charge, the Court would *normally* have to focus its analysis solely on the Plaintiff's first EEOC charge, which pertained to her demotion claim, and seek to determine whether the Plaintiff's suspension and constructive discharge claims are within "the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the [first] charge of discrimination." *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 466 (5th Cir.1970); *Chisholm v. U.S. Postal Service,* 665 F.2d 482, 491 (4th Cir.1981). Such is not the case here, however, where the Plaintiff has alleged that she was suspended[6] and eventually constructively discharged[7] from her employment in retaliation for having filed discrimination charges against her employer with the EEOC.[8]

3. *See* Exhibit B, attached to the Defendants' motion to dismiss, filed October 13, 1982.

4. "If a complainant is dissatisfied with the progress the EEOC is making on his or her charge of employment discrimination, he or she may elect to circumvent the EEOC procedures and seek relief through a private enforcement action in a district court. The 180-day limitation provides only that his private right of action does not arise until 180 days after a charge has been filed." *Occidental Life Ins. Co. v. EEOC,* 432 U.S. 355, 361, 97 S.Ct. 2447, 2451, 53 L.Ed.2d 402 (1977) (42 U.S.C. § 2000e–5(f)(1)).

5. In a Title VII action "A motion to dismiss for failure to exhaust federal administrative remedies is ... more analogous to a dismissal motion based on the expiration of the statute of limitations rather than one based on a jurisdictional limitation." *Algea v. Schweiker,* 529 F.Supp. 163, 165 (D.Md.1981); *Baruah v. Young,* 536 F.Supp. 356, 361 (D.Md.1982). *Cf. Citicorp Person To Person Financial Corp. v. Brazell,* 658 F.2d 232 (4th Cir.1981).

6. Complaint, ¶ 8.

7. "[I]f the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation, then the employer has encompassed a constructive discharge and is liable for any illegal conduct involved therein as if it had formally discharged the aggrieved employee."
*Young v. Southwestern Savings and Loan Association,* 509 F.2d 140, 144 (5th Cir.1975). "[T]o find constructive discharge 'the trier of fact must be satisfied that the ... working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign ....'
The focus, then, in a constructive discharge case is on the reasonable state of mind of the putative discriminatee."
*Vaughn v. Pool Offshore Co.,* 683 F.2d 922, 926 (5th Cir.1982).

8. In *Ong v. Cleland,* 642 F.2d 316 (9th Cir. 1981), a Title VII plaintiff filed an administrative charge complaining of her employer's allegedly discriminatory denial of her application for a promotion. Ong's subsequent civil action additionally contained a constructive discharge claim which was solely predicated upon the fact that Ong took a disability retirement due to her nervous disorder which she claimed was caused by her employer's discriminatory denial of her promotion application. The Ninth Circuit held that Ong's failure to exhaust her ad-

In this regard, one district court in this circuit has stated the controlling rule as follows:

"In the absence of any indication of dereliction by the agency, it is this court's opinion that the scope of an EEOC investigation should be conclusive on the scope of a subsequent Title VII suit with two limited exceptions.[10]

[10] ... the second exception is where an employer acts in reprisal against an employee because a discrimination charge has been filed. *See Pettway v. American Cast Iron Pipe Company,* 411 F.2d 998, 1004–08 (5th Cir.1969); 42 U.S.C. § 2000e–3."

*Hubbard v. Rubbermaid, Inc.,* 436 F.Supp. 1184, 1190–91 (D.Md.1977). *Accord Haynes v. Mark,* 520 F.Supp. 1183, 1184 (D.Col.1981) (citing cases).[9]

█ Provided the Plaintiff can prove the Defendants' alleged retaliatory animus behind her suspensions and constructive discharge, the Court can hear these unexhausted claims under Title VII without offending the statutory scheme of informal persuasion and voluntary compliance. In any event, these unexhausted claims are independently actionable under Section 1981. *Cf., Taylor v. Union Carbide Corporation,* 93 F.R.D. 1, 4 (S.D.W.Va.1980).

## II. Plaintiff's Title VII and Section 1981 Claims Against the Individual Defendant, Boswell

*A. Subject Matter Jurisdiction Over the Title VII Claim Against Boswell.*

The Defendant Boswell argues that the Court does not have subject matter jurisdiction over him with respect to the Plaintiff's Title VII claim, since he was not named as a respondent in the complaints which the Plaintiff filed with the EEOC. *See* 42 U.S.C. § 2000e–5(f)(1).[10] Mindful of the administrative filing requirement's twofold purpose of giving notice to the charged party and of providing an avenue for voluntary compliance, the Plaintiff maintains that Boswell should not be allowed to cry foul where he is an agent of the named respondent and where his allegedly retaliatory conduct and statements[11] indicates that he had actual notice of the administrative proceedings. The issue at hand is by no means novel in either this circuit or elsewhere.

ministrative remedies on her constructive discharge claim precluded her from raising it in her civil action. The Defendants at bar rely heavily on *Ong* in support of their argument that the Court cannot hear the Plaintiff's unexhausted claims. Unlike *Ong's* unexhausted claims, however, this Plaintiff's unexhausted claims allegedly resulted from the Defendant's retaliations against her for having filed an EEOC charge. Accordingly, the Defendants' reliance on *Ong* is misplaced.

9. "[P]rior resort to the EEOC is not a prerequisite to including an allegation of retaliation in the civil suit.... The rationale ... [for this] is twofold: (1) retaliation is the kind of Title VII violation which 'can reasonably be expected to grow out of the charge of discrimination,' ... and (2) there is a strong policy justification in deterring an employer from attempting to discourage an employee from exercising his or her rights under the Civil Rights Act. Additionally, since it is the nature of retaliation claims that they arise after the filing of the EEOC charge, requiring prior resort to the EEOC would mean that in every case where retaliation is in issue the employee would have to file a second charge with the EEOC, thereby erecting another procedural barrier to a Title VII suit. Courts have expressed a reluctance to erect additional barriers to suit, noting that the private lawsuit is essential to obtaining the goals of Title VII ...."
*National Organization for Women v. Sperry Rand Corp.,* 457 F.Supp. 1338, 1344 (D.Ct. 1978).

Moreover, the Fifth Circuit has recently held "that it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court." *Gupta v. East Texas State University,* 654 F.2d 411, 414 (5th Cir.1981). *But cf., Bickley v. University of Maryland,* 527 F.Supp. 174 (D.Md.1981); *Roberts v. Arizona Board of Regents,* 477 F.Supp. 28 (D.Ariz.1979), *affirmed without reaching the relevant issue* 661 F.2d 796 (9th Cir.1981).

10. 42 U.S.C. § 2000e–5(f)(1) provides in pertinent part that, "[A] civil action may be brought against the *respondent named in the charge* ... by the person claiming to be aggrieved ...." (Emphasis added).

11. *See* Exhibit B attached to the Defendants' motion to dismiss, filed October 13, 1982.

In *Mickel v. South Carolina State Employment Service,* 377 F.2d 239 (4th Cir.) *cert. denied* 389 U.S. 877, 88 S.Ct. 177, 19 L.Ed.2d 166 (1967), a black applicant brought a Title VII action against a state employment agency and a private company with which he had desired employment. The company successfully moved for dismissal on the basis that the plaintiff had not named it as a respondent in her EEOC complaint. On appeal, the Fourth Circuit held that an opportunity for administrative conciliation is a jurisdictional prerequisite to bringing a civil action under Title VII and concluded that the plaintiff had not satisfied that prerequisite as to the company where she had not named it in her administrative complaint, and where there was neither any indication that she had had any direct dealings with the company nor that the state employment agency, which had been named in the EEOC complaint, had acted as the company's agent in discriminating against her.

*Mickel* has been distinguished on its facts, however, in at least three subsequent Title VII actions in this circuit. *Cf., EEOC v. American National Bank,* 652 F.2d 1176, 1185–86 (4th Cir.1981), *rehearing en banc denied* 680 F.2d 965 (4th Cir.1982) *cert. denied* —— U.S. ——, 103 S.Ct. 235, 74 L.Ed.2d 186 (1982). In *Kelly v. Richland School District,* 463 F.Supp. 216 (D.S.C. 1978),[12] the school district's board of trustees and the individual board members moved that the Title VII claim against them be dismissed, inasmuch as the Plaintiff had not named them as respondents in his EEOC complaint. Finding that the purposes of the administrative filing require-

ment had been satisfied with respect to the unnamed defendants, the court denied their motion. In doing so, the court reasoned that the notice of the alleged discriminatory conduct and the opportunity for voluntary conciliation which the EEOC complaint afforded to the named school district was attributable to the board of trustees and its members since under state law the school district could only act through them.

In *Vanguard Justice Society, Inc. v. Hughes,* 471 F.Supp. 670 (D.Md.1979), the court held that it was not deprived of subject matter jurisdiction over the individual defendants who were not named in the EEOC complaint, but who were officials of the named entities where the unnamed defendants had not asserted that they lacked actual notice of the EEOC charge, nor that the EEOC's conciliation efforts were in any way affected by the plaintiff's failure to name them in the administrative complaint. *Accord, Chastang v. Flynn and Emrich Co.,* 365 F.Supp. 957, 959–64 (D.Md.1973), *affirmed in relevant part* 541 F.2d 1040 (4th Cir.1976) (identity of interests between named corporation and its unnamed officers and directors).

In *Glus v. G.C. Murphy Co.,* 562 F.2d 880, 888 (3d Cir.1977) [*Glus I*] the Third Circuit astutely commented that:

> "[M]uch of the initiation of charges with the EEOC is done by laymen .... We cannot believe Congress intended that a person filing charges should accurately ascertain, at the risk of later facing dismissal of their suit, at the time the charges were made, every separate entity

---

**12.** After characterizing the general rule that a civil action may not be brought under Title VII against a defendant who was not named in a timely EEOC charge as a jurisdictional requirement, the *Kelly* court went on to state that:

> " 'This rule is less than absolute, however, and several exceptions have been recognized as sufficient to confer jurisdiction over defendants in a civil action who were not named in the EEOC charges.'
>
> \* \* \* \* \* \*
>
> The cases which have applied these exceptions have done so only where the purpose of the EEOC filings, notice to the alleged violat-

or and opportunity for voluntary compliance through conciliatory efforts, have been effectuated with respect to the unnamed defendants."

*Kelly v. Richland School District, supra,* at 219, *quoting Curran v. Portland Superintending School Committee,* 435 F.Supp. 1063, 1074 (D.Me.1977) (asserting jurisdiction over the unnamed defendant which had actual or constructive notice of the EEOC proceedings and moreover which was an indispensable party, while dismissing those unnamed defendants who had neither actual nor constructive notice of the administrative proceedings.

which in some way may have violated Title VII.

\*   \*   \*   \*   \*   \*

The goal of conciliation without resort to the already overburdened federal courts is of great importance and should not be lost. However, equally important is the availability of complete redress of legitimate grievances without undue encumbrance by procedural requirements especially when demanding full and technical compliance would have no relation to the purposes for requiring those procedures in the first instance."

The *Glus* court went on to enumerate the following four factors which a district court should consider in determining whether it has jurisdiction under Title VII over defendants who were not named in the plaintiff's EEOC complaint:

First, whether the plaintiff, through reasonable effort, could have ascertained the role of the unnamed defendant at the time she filed her EEOC complaint;

Second, whether the interests of the named defendant are so similar as the unnamed defendants that it would be unnecessary to include the unnamed defendant in the EEOC complaint for the purpose of obtaining voluntary conciliation and compliance;

Third, whether his absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed defendant; and

Fourth, whether the unnamed defendant has in some way represented to the plaintiff that his relationship with the plaintiff is to be through the named defendant. *Id.*

In *Glus II* the Third Circuit further stated that:

"This four-pronged test is not a mechanical one; no factor is decisive. Instead each factor should be evaluated in light of the statutory purposes of Title VII and the interests of both parties."

*Glus v. G.C. Murphy Co.*, 629 F.2d 248, 251 (3d Cir.1980) *vacated on other grounds* 451 U.S. 935, 101 S.Ct. 2013, 68 L.Ed.2d 321 (1981) [*Glus II*].[13] Cf., *Wong v. Calvin*, 87 F.R.D. 145 (N.D.Fla.1980).[14] *But cf., Martin v. Easton Publishing Co.*, 478 F.Supp. 796 (E.D.Pa.1979).

█ In the action at bar, it is apparent that the Plaintiff knew of Boswell's role in her allegedly discriminatory demotion and suspensions at the time she filed her EEOC complaints, inasmuch as she repeatedly

---

**13.** In *Glus II*, the Third Circuit affirmed the district court's finding that it had jurisdiction under Title VII over the unnamed international union where: (1) the international's interests were identical to those of its named local, (2) the international's interests were vigorously litigated by the local before the EEOC, (3) the plaintiff could have been led to reasonably assume that the local would represent the international's interests because of the close relationship between the two, and (4) the conciliation process before the EEOC was not rendered less effective because of the international's absence. *Glus II, supra*, at 251–52.

The Supreme Court, in vacating *Glus II*, did *not* call the Third Circuit's four-pronged test into question. *See e.g., Eggleston v. Chicago Journeymen Plumbers*, 657 F.2d 890 (7th Cir. 1981) *cert. denied* 455 U.S. 1017, 102 S.Ct. 1710, 72 L.Ed.2d 134 (1982). Rather, the court remanded *Glus II* for reconsideration in light of *Northwest Airlines, Inc. v. Transport Workers Union of America*, 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981) (holding that an employer does not have either a statutory or a common law right of contribution from a union which allegedly bears at least partial responsibility for the employer's violation of Title VII).

**14.** Wong filed an EEOC complaint wherein he alleged that the Florida Department of Highway Safety and Motor Vehicles had discriminatorily discharged him on the basis of his race and national origin. After having received his right to sue letter, the plaintiff commenced a civil action, wherein he named, *inter alia*, the Department director as a defendant. The director moved that the Title VII claim against him be dismissed on the grounds that the court did not have jurisdiction over him, inasmuch as the plaintiff had not named him in the EEOC complaint. The district court denied the director's motion, finding that the purposes for the EEOC filing requirement had been satisfied with respect to the director. In doing so, the court centered its analysis on the second prong of the *Glus* test and determined that voluntary compliance was not impeded by the plaintiff's failure to name the director in his EEOC charge since the director's interests were the same as those of the parties named in the administrative charge.

named Boswell in the texts of both administrative charges.[15] On the other hand, Boswell has not claimed that he has been prejudiced by not having been named as a respondent in the Plaintiff's EEOC complaints. Moreover, the Court cannot perceive how he could claim any prejudice as a result of the Plaintiff's technical oversight, given his managerial position with the named Defendant and the fact that he was repeatedly named in the texts of the EEOC complaints.[16] Accordingly, the Court finds that it has subject matter jurisdiction over the Title VII claim against Boswell.

### B. Boswell Is Suable As An Employer Under Title VII, 42 U.S.C. § 2000e(b).

Boswell further contends that he is not properly subject to suit under Title VII, inasmuch as he is not an employer as defined in the Act.[17] Relying on *Haynes v. Miller,* 669 F.2d 1125 (6th Cir.1982)[18] and *Cannon v. State of Delaware,* 523 F.Supp. 341 (D.Del.1981)[19] Boswell tenuously argues that the Court should not apply Section

2000e(b)'s agency language to him since the Plaintiff would not be prejudiced from his dismissal, inasmuch as his co-defendant, Levolor Lorentzen, Inc., is an employer in the normal sense of the term.[20] The Plaintiff, on the other hand, forcefully argues that Boswell, as the plant manager at Lorentzen's Weirton facility, who made the personal decisions which the Plaintiff complains of, is an agent of the Defendant company and, consequently, comes within Title VII's definition of an employer.

In *Munford v. James T. Barnes and Company,* 441 F.Supp. 459 (E.D.Mich.1971), a black female plaintiff brought a Title VII action against the defendant company and two of its supervisory employees who had responsibility for making personnel decisions for the defendant company. Munford predicated her action upon the allegations that she was discharged from her employment with the defendant company because she rebuffed the repeated, overt sexual advances of one of the individual defendants, as well as upon the fact that the other

---

**15.** *See* Exhibits A and B, attached to the Defendants' motion to dismiss, filed October 13, 1982.

**16.** Given the allegations in Paragraph III(d) of the Plaintiff's second EEOC complaint that, "Mr. Boswell has made reference to my charge on several occasions ... [and] stated, 'I don't get mad, I get even,'" and taking these allegations as true, as it must at this early stage of the proceedings, the Court finds that Boswell had actual notice of the Plaintiff's first administrative complaint. The Court further finds that the EEOC conciliation efforts were not impeded, since Boswell was repeatedly named in the texts of both EEOC complaints.

**17.** The term "employer" means
"A person engaged in an industry affecting commerce who has at least fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, *and any agent of such a person* ...."
42 U.S.C. § 2000e(b) (Emphasis added).

**18.** The defendant stockholder in *Haynes* argued on appeal that he was not the plaintiff's employer as defined in § 2000e(b). In vacating the judgment against the defendant, however, the Sixth Circuit did not address that particular assignment of error. Boswell's reliance on *Haynes,* therefore, is misplaced.

**19.** After being discharged from her employment at the Delaware State Hospital, Cannon brought a Title VII action against the Delaware Personnel Commission which had unanimously upheld her discharge. In denying the defendant's *Rule* 12(b) motion, the *Cannon* court stated that it "need not conclude that the Personnel Commission is an employer in the usual sense, because the Act expressly reaches the conduct of 'any agent' whose conduct may violate ...." Title VII. *Cannon v. State of Delaware, supra,* at 343. Inasmuch as *Cannon* gives Section 2000e(b)'s agency language a broad construction, this Court finds that Boswell's reliance on it is misplaced.

**20.** Boswell ignores the fact that Congress intended to proscribe employment discrimination "in the broadest possible terms" and the judicial mandates that "Title VII of the Civil Rights Act of 1964 should be accorded a liberal interpretation in order to effectuate the purpose of Congress to eliminate the inconvenience, unfairness, and humiliation of [employment] discrimination." *See e.g., Rogers v. EEOC,* 454 F.2d 234, 238 (5th Cir.1971), *cert. denied* 406 U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343 (1972). To conclude otherwise would encourage supervisory employees to violate Title VII with impunity.

individual defendant refused to investigate her protests of her discharge. In denying the defendants' motion for summary judgment, the *Munford* court determined that the individual defendants were within Section 2000e(b)'s definition of employer, since they admittedly had the responsibility for making personnel decisions for the defendant company and, accordingly, would be considered its agents. *Cf., Guyette v. Stauffer Chemical Co.,* 518 F.Supp. 521 (D.N.J.1981) (limiting Section 2000e(b)'s definition of "employer" to supervisory employees).

■ The Plaintiff at bar alleges that plant manager Boswell demoted her in August of 1981, solely on the basis of her race and sex, and that he subsequently suspended her and otherwise discriminated against her in retaliation for having filed a complaint with the EEOC in response to her demotion.[21] Since the Plaintiff alleges that Boswell was responsible for making the complained of personnel decisions for the Defendant company, this Court is precluded from summarily finding that Boswell is not subject to suit as an employer. 42 U.S.C. § 2000e(b). *See Munford v. James T. Barnes and Co., supra.*

C. *Section 1981 Claim Against Boswell.*

■ 42 U.S.C. § 1981 provides in pertinent part as follows:

"All persons within the jurisdiction of the United States shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens ...."

The Supreme Court has extended Section 1981's protection of contract rights to encompass an individual's rights under a private employment contract by recognizing "that § 1981 affords a federal remedy against discrimination in private employment on the basis of race." *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 460, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295 (1975). *Accord, Brown v. Gaston County Dyeing Machine Co.,* 457 F.2d 1377, 1379 (4th Cir.) *cert. denied* 409 U.S. 982, 93 S.Ct. 319, 34 L.Ed.2d 246 (1972).[22] While conceding the above, Boswell argues that the Plaintiff has not stated a cause of action against him under Section 1981, inasmuch as he is not in privity of contract with the Plaintiff.[23] In advancing this argument, Boswell incorrectly assumes that an individual employee of a corporate defendant cannot be held liable under Section 1981 for the same action which allegedly gives rise to corporate liability.

The Fourth Circuit has held in this regard that corporate "directors become personally liable when they intentionally cause a corporation to infringe the rights secured by ... [section] 1981 ...." *Tillman v. Wheaton-Haven Recreation Association, Inc.,* 517 F.2d 1141, 1146 (4th Cir.1975).

In rejecting Boswell's argument, another court has stated that:

"[I]t is well established that a director, officer, or agent of a corporation is liable in damages for injuries suffered by third persons because of his torts, regardless of whether he acted on his own account or on behalf of the corporation and regardless of whether or not the corporation is also liable.... Indeed, the Supreme Court in *Sullivan v. Little Hunting Park, Inc.,* 396 U.S. 229, 236–237 [90 S.Ct. 400,

---

**21.** *See* Exhibits A and B attached to the Defendants' motion to dismiss, filed October 13, 1982.

**22.** Even though the Plaintiff's Title VII claim is predicated upon both sexual and racial discrimination, Plaintiff's Section 1981 claim is properly predicated solely on racial discrimination. *Cf., Runyon v. McCrary,* 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976); *Bailey v. Local 667 of the International Brotherhood of Boilermakers,* 480 F.Supp. 274 (N.D.W.Va.1979).

**23.** Boswell contends that:

"[T]he prohibitions of ... [§ 1981] apply to those who offer the employment opportunities which individuals seek when attempting to make contracts for their labor. [Since] [t]here is no allegation ... that Boswell as an individual offers any jobs for which prospective employees could contract [he concludes that the Plaintiff has not stated a claim against him under § 1981]."

Defendants' memorandum in support of their motion to dismiss at page 14, filed October 13, 1982.

404–05, 24 L.Ed.2d 386] (1969), applied this principle to litigation under Section 1982, the companion statute to Section 1981. There, the court permitted plaintiffs to sue under Section 1982 a recreational corporation as well as its directors for a refusal to permit the assignment of membership rights to a black lessee. Subsequently, a number of courts have permitted suits under Section 1981 against both corporations and corporate directors or officers who authorize, direct or participate in the alleged discriminatory conduct."

Manuel v. International Harvester Co., 502 F.Supp. 45, 49–50 (N.D.Ill.1980) (holding that the plaintiff had stated a cause of action under Section 1981 against corporate employees who allegedly decided to terminate the plaintiff's employment with the defendant corporation on the basis of his race). Accord, Coley v. M & M Mars, Inc., 461 F.Supp. 1073, 1076 (M.D.Ga.1978) (holding that a plant manager and other supervisory employees of a corporate defendant may be held individually liable under Section 1981 for their allegedly discriminatory interference with the plaintiff's contractual relationship with the corporate employer).

The Plaintiff at bar alleges that the Defendants demoted her from her former position of office manager, subsequently suspended her employment on several occasions and finally constructively discharged her all on account of her race. These allegations preclude the Court from summarily dismissing the Plaintiff's Section 1981 claim against plant manager Boswell at this early stage of the proceedings.

### III. Punitive Damages

■ The Defendants correctly argue that punitive damages may not be awarded to a plaintiff who prevails on a Title VII claim, inasmuch as such damages are not authorized by 42 U.S.C. § 2000e–5(g).[24] See Walker v. Ford Motor Co., 684 F.2d 1355, 1363–64 (11th Cir.1982); Shah v. Mt. Zion Hospital and Medical Center, 642 F.2d 268, 272 (9th Cir.1981); Miller v. Texas State Board of Barber Examiners, 615 F.2d 650, 654 (5th Cir.) cert. denied 449 U.S. 891, 101 S.Ct. 249, 66 L.Ed.2d 117 (1980); DeGrace v. Rumsfeld, 614 F.2d 796, 808 (1st Cir.1980); Pearson v. Western Electric Co., 542 F.2d 1150, 1151–52 (10th Cir.1976). See generally Russell v. American Tobacco Co., 528 F.2d 357, 366 (4th Cir.1975) cert. denied 425 U.S. 935, 96 S.Ct. 1666, 48 L.Ed.2d 176 (1976). In moving to strike the Plaintiff's request for punitive damages, however, the Defendants have not taken into account the fact that the Plaintiff has also brought this action under 42 U.S.C. § 1981, which, in an appropriate case, provides an independent basis for awarding punitive damages. See, Heritage Homes of Attleboro v. Seekonk Water District, 648 F.2d 761, 763 (1st Cir.1981) cert. denied —— U.S. ——, 102 S.Ct. 2934, 73 L.Ed.2d 1333 (1982). See generally Johnson v. Railway Express Agency, Inc., supra 421 U.S. at 460, 95 S.Ct. at 1720. Accordingly, the Court grants the Defendants' motion to strike the Plaintiff's prayer for punitive damages with respect to her Title VII claim, but denies the same with respect to her Section 1981 claim.

The Clerk is directed to send a certified copy of this Memorandum Opinion and Order to counsel of record.

---

24. The Supreme Court has observed that, "The majority of federal courts have held that the Act [Title VII] does not allow a court to award ... punitive damages." Great American Federal Savings and Loan Association v. Novotny, 442 U.S. 366, 374–75, 99 S.Ct. 2345, 2350, 60 L.Ed.2d 957 (1979) (dicta).